```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
2

3     ------------------------------------------------------------

4     UNITED STATES OF AMERICA,           Criminal No.:  O:06-211

5              Plaintiff,                     TRANSCRIPT

6          vs.                                   OF

7     KEVIN JOSEPH FENNER,                    PROCEEDINGS

8              Defendant.

9     ------------------------------------------------------------

10

11

12              The above-entitled matter came on for hearing

13    before Judge Michael J. Davis, on January 17th, 2008, at the

14    United States District Courthouse, 300 South Fourth Street,

15    Minneapolis, Minnesota 55415, commencing at approximately

16    10:15 a.m.

17

18

19                              CALIFORNIA CSR NO.:  8674

20                          ILLINOIS CSR NO.:  084-004202

21                              IOWA CSR NO.:  495

22                          RMR NO.:  065111

23

24

25
```

1                          <u>APPEARANCES</u>

2                  OFFICE OF THE UNITED STATES ATTORNEY, 300 South

3       Fourth Street, Suite 600, Minneapolis, Minnesota 55415, by

4       JEFFREY PAULSEN, Assistant United States Attorney, appeared

5       as counsel on behalf of Plaintiff.

6                  WILLIAM M. ORTH LAW OFFICE, 100 Barristers

7       Trust Bldg., 247 Third Avenue South, Minneapolis, Minnesota

8       55415, by WILLIAM M. ORTH, Attorney at Law, appeared as

9       counsel on behalf of Defendant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Let's call the first case.

2          CALENDAR CLERK:  United States of America

3    versus Kevin Joseph Fenner, Criminal Case Number 06-cr-211.

4          Counsel, would you please state your

5    appearances for the record.

6          MR. PAULSEN:  Good morning.  Jeff Paulsen for

7    the United States.

8          THE COURT:  Good morning.

9          MR. ORTH:  Good morning, your Honor.  Bill Orth

10   representing Mr. Fenner, who is present.

11         THE COURT:  Good morning.

12         THE DEFENDANT:  Good morning.

13         THE COURT:  We're here for sentencing.

14         Counsel, have you had an opportunity to read

15   the presentence investigation report?

16         MR. PAULSEN:  The Government has, including the

17   latest revised version.

18         MR. ORTH:  The same here, your Honor.

19         THE COURT:  Any objections to the factual

20   statements contained in the presentence investigation report?

21         MR. PAULSEN:  Not to the factual statements on

22   the part of the Government.

23         MR. ORTH:  Nothing than what I've already put

24   in my previous pleadings, your Honor.

25         THE COURT:  The court has reviewed the

1    presentence investigation report prepared and amended for

2    this court and finds that the factual statements contained in

3    the presentence investigation report will be adopted by this

4    court.   Any and all objections by the defense are denied.

5              Do you have some constitutional motions that

6    you wish to make?

7              MR. ORTH:   I have consistently brought before

8    this court the deficiency and the unconstitutionality of 21

9    United States Code, Section 841(b)(1)(A)(iii).   Every United

10   States Supreme Court decision, since I started attacking that

11   constitutionality, and every action of the United States

12   Sentencing Commission, supports our position that it is now

13   unconscionable for an Article III judge, with pending

14   legislation in Congress, rectifying a 100-to-one disparity

15   between crack cocaine and powder cocaine.   That has been

16   proven to have no basis in science or in sociology.   Five

17   bills pending in Congress on that very issue.   The United

18   States Sentencing Commission taking the unprecedented move to

19   make the crack guidelines -- the lowered crack guidelines

20   retroactive.   I've been talking to other judges -- not

21   federal judges -- but state-court judges, who happen to be

22   friends of mine.   They were lawyers before they became

23   judges.   And the state-court judges always tell me, you know,

24   it's very hard for us judges to find a statute

25   unconstitutional and I agree that most of the time it is.

1       Because the usual standard for finding a statute

2       unconstitutional is the rational basis test, is there any

3       rational basis for this legislation.  I submit to you, Judge

4       Davis, today, January 17th, 2008, there can no longer be a

5       rational basis for the 100-to-one crack to powder disparity,

6       and there no longer can be any constitutional justification

7       for 21 United States Code, Section 841(b)(1)(A)(iii), because

8       it has been proven, over 20 years of sentencing guideline

9       commission reports, that that statute -- this really impacts

10      African-Americans to the tune that 85 to 90 percent of those

11      convicted for crack offenses in federal court are

12      African-American.  The 100-to-one crack to powder disparity

13      does not pass the rational basis test and, more importantly,

14      it does not pass the stricter test of strict scrutiny because

15      it's been proven to be race-impacted.  I believe it's time

16      for this court to stand up and impose the sentence for the

17      powder cocaine rather than the crack cocaine mandatory

18      minimum.

19                   In 1954, the code word was separate but equal.

20      That was code for racial division, it was code for racism.

21      We can send the little black kids over to this school and

22      we'll keep the white kids over at this school.  But as long

23      as the schools are equal, they can be separated.  And

24      Thurgood Marshall stood up against that in the United States

25      Supreme Court and -- you know, after 70 years of Supreme

1    Court decisions.  The time in 1954 came, and Thurgood

2    Marshall, with his ragtag bunch of little lawyers, with a

3    typewriter, in Harlem, went to the United States Supreme

4    Court.  And the issue there was there was no science or

5    sociology supporting the fact of separating children in

6    education.  And the reality was the disparate impact on the

7    children hurt African-American children.  In the crack

8    cocaine cases, it's been shown that African-Americans get a

9    hundred-to-one times penalized those of white folks using

10   powder.  There come times in history when it's important to

11   stand up.  Ten years after *Brown v. The Board*, Reverend

12   Martin Luther King stood up, took to the streets and pushed

13   through legislation in Congress, the Civil Rights Act, that

14   helped give legal support to the theory of equality.  There

15   are times in history, your Honor, when we can't sit back and

16   say the law is the law, Congress passed the law and therefore

17   we can do nothing.

18            Another individual in history who happens to

19   still be alive -- Thurgood Marshall is gone, the Reverend

20   Martin Luther King, Jr., is gone, untimely taken from us by

21   an assassin's bullet.  I'd like to read for the court the

22   last public words of Nelson Mandela before he was sentenced

23   to life in prison.  And remember his crime.  His crime was to

24   stand up to the Dutch apartheid word.  "Apartheid" meaning

25   separateness.  Sounds like separate but equal.  And right

1   before he was sentenced to life in prison, he told the judge:

2   "During my lifetime, I have dedicated myself to the struggle

3   of the African people.  I have fought against white

4   domination and I have fought against black domination.  I

5   cherish the ideal of a democratic and free society where all

6   persons can live together with equal opportunity.  It is an

7   ideal which I hope to live for and achieve.  But if need be,

8   it is an ideal for which I am prepared to die."  Nelson

9   Mandela survived prison, became the president of South

10  Africa, and is still active in human rights.  He turns 90

11  this July.  Nelson Mandela stood up and the system couldn't

12  break him.  Nelson Mandela stood up for what was right.  I'm

13  asking this court not to throw out all the mandatory

14  minimums, but specifically, based on what the Sentencing

15  Guideline Commission has done, what the United States Supreme

16  Court has recently done, and the pending legislation in

17  Congress, to find it unconscionable and unconstitutional to

18  sentence Kevin Fenner to life in prison without release,

19  under 21 United States Code, Section 841(b)(1)(A)(iii).

20              THE COURT:  Mr. Paulsen.

21              MR. PAULSEN:  The court obviously has to apply

22  the law in effect at the time of sentencing.  Bills that are

23  maybe pending but have not been enacted are not the law.  The

24  Supreme Court in *Kimbrough* upheld the mandatory minimum

25  penalty in a crack offense.  They did not question the

1    mandatory minimums.   They did question the guidelines.

2    Mr. Fenner's sentence is not affected by the guidelines.   The

3    idea that it would be unconstitutional to impose a life

4    sentence on somebody who has five prior felony drug

5    convictions and has not been deterred, but who has spent 20

6    years of his life selling drugs -- and in the instant offense

7    was caught selling not only crack cocaine but a drug called

8    "killer heroin," which has killed people here and elsewhere

9    -- should be rejected.   It is not unconscionable where

10   someone has failed to conform is behavior to requirements of

11   the law, when he's had five prior felonies and has not been

12   deterred, it is not unconscionable to say enough is enough.

13   You're never going to stop.   You're now killing people with

14   your drugs.   It's time to put you out of business forever.

15   And that's what I'm asking the court to do.   The same 50-gram

16   threshold for crack cocaine to trigger a mandatory life

17   applies to methamphetamine.   If you have 50 grams of

18   methamphetamine actual, and you have two or more prior

19   convictions, you're subject to mandatory life.   Most of the

20   offenders who deal in methamphetamine are either caucasian or

21   Hispanic, very few are African-American.   In fact, the last

22   time I did the research -- which was in preparation for this

23   sentencing that was supposed to occur last summer -- since

24   2000, there have been seven mandatory life sentences

25   reflected in the Eighth Circuit; four of them were for meth,

1        only two of them were for crack, and one of them was for a
2        combination of powder cocaine and marijuana.   So the idea
3        that mandatory life sentences are falling disproportionately
4        on African-Americans, at least in the Eighth Circuit, does
5        not seem to be borne out by the statistics.
6                     You know, if this were Mr. Fenner's first
7        offense, he wouldn't be facing mandatory life.   There also
8        might be some room for this argument that some leniency
9        should be imposed.   But Mr. Fenner has been doing this for 20
10       years.   He had a federal conviction for cocaine in 1994 in
11       this court.   He knows the penalties.   He knows the disparity
12       between powder and crack.   He's been there before.   He knows
13       the federal penalties.   He chose to sell crack.   His MO was
14       to go down to Chicago, pick up a kilo of powder cocaine,
15       bring it back and, with his confederates, cook it up into
16       crack cocaine and sell it.   He could have chose to sell only
17       powder.   He chose to sell crack.   Why? Because he could make
18       more money doing it.   So with full knowledge of the law, full
19       knowledge of the penalties, having been caught and convicted
20       four times before, he continued to do it.   And that's why
21       he's looking at mandatory life.   It's not just the amount of
22       drugs he sold, it's this whole 20-year history of selling
23       drugs.   He's being punished now for a lifetime of drug
24       dealing because he would not stop.   And instead of stopping,
25       he got into more and more dangerous drugs, including the

1        killer heroin, the Fentanyl, that is 40 times more potent

2        than regular heroin, and was killing people here in the Twin

3        Cities and elsewhere.  For those reasons I urge the court --

4                    THE COURT:  I think it's a hundred times.

5                    MR. PAULSEN:  Pardon me?

6                    THE COURT:  I think it's a hundred times.

7                    MR. PAULSEN:  Yeah.  I was being conservative.

8        They say 40 to a hundred times.  At trial, we had a chemist

9        come in and we used the conservative approach of 40 times.

10       But the problem with it is he was passing it off as heroin.

11       He wasn't telling people it was Fentanyl.  People use it,

12       they use as much as they would use when they use heroin, and

13       they overdose and they die.  He collects the money and finds

14       more customers.  It's tragic, but that was the business he

15       was in and that's why I'm asking it to be stopped forever.

16                   THE COURT:   In the last year, we've had a

17       couple of changes in our sentencing regimen, from sentencing

18       guidelines to the Supreme Court.  There have been cases that

19       have percolated through the system that have not had the

20       result that Mr. Orth would want or Mr. Fenner.  The court,

21       once it pronounced the sentence is for life, knows that it

22       would be extremely difficult to pull that back.  But we find

23       that we've had a discourse on these issues, both from our

24       higher courts and also in our legislative branches of

25       government.  Yesterday I denied your motion for continuance;

1      today I will grant it.  We'll continue this matter until

2      August 1st, 2008, at nine o'clock.  I'm assuming by that time

3      both Houses will be finished with their legislative sessions

4      because of the election and the conventions that have to be

5      had for the presidential nominees.  So we will know by then

6      whether or not, and if, there are to be any changes,

7      changes in the statute which I believe has to come from the

8      Legislature.

9                    I suspect that, Mr. Orth, you don't know my

10     history, but I take offense with some of the things that you

11     said about the court --

12                   MR. ORTH:  Your Honor --

13                   THE COURT:  Let me finish.

14                   MR. ORTH:  Okay.

15                   THE COURT:  This court has been involved in

16     equal justice for over 40 years.  It has been on the side, as

17     a criminal defense lawyer, standing up to judges that did not

18     follow a lower court decision, and forcing those issues for

19     the defendant.  This court has been a judge for close to 25

20     years, and has, and will continue to pursue, the dream of Dr.

21     Martin Luther King, the dream of Thurgood Marshall.  If you

22     come into my chambers, you will see I have a picture of both

23     of those men.  I am older than you.  I was in Chicago when

24     Dr. Martin Luther King was assassinated.  I was in Chicago at

25     the Democratic National Convention when Mayor Daley cried.  I

1       was alive and well when Robert Kennedy was killed.  I was

2       alive and well when the decade of prejudice came in.  I grew

3       up in the area of segregation.  There was no code word.  It

4       was the law.  Be careful how you speak, and understand who

5       you're talking to, because there's no one on this Bench that

6       has done more for equal justice than me.

7       Just because I don't stand up on a Bench and shout.  This

8       judge makes sure that it's done.  I fear no government

9       entity, I fear no defendant, I fear no defense counsel when

10      it comes to equal justice.  We're recessed.

11              (Court stood in recess at approximately 10:45

12      a.m., on January 17th, 2008).

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF MINNESOTA)

                              )ss.

COUNTY OF HENNEPIN)


        I, Ronald J. Moen, CSR, RMR, and a Notary Public in
and for the County of Hennepin, in the State of Minnesota, do
hereby certify:

        That the said proceeding was taken before me as a
CSR, RMR, and a Notary Public at the said time and place and
was taken down in shorthand writing by me;

        That said proceeding was thereafter under my direction
transcribed into computer-assisted transcription, and that
the foregoing transcript constitutes a full, true and correct
report of the transcript of proceedings which then and there
took place;

        That I am a disinterested third person to the said

action;

        That the cost of the original has been charged to the
party who ordered the transcript of proceedings, and that all
parties who ordered copies have been charged at the same rate
for such copies.

        That I reported pages 1 through 13.

        IN WITNESS THEREOF, I have hereto subscribed my hand
this 30th day of January, 2009.


                                s/ Ronald J. Moen
                                RONALD J. MOEN,
                                CSR, RMR