UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---------------------------------------------------------
                                  )
United States of America,         )  File No. CR-06-211
                                  )           (MJD/AJB)
          Plaintiff,              )
                                  )
vs.                               )  Minneapolis, Minnesota
                                  )  December 9, 2008
(1) Kevin Joseph Fenner,          )  9:55 a.m.
                                  )
          Defendant.              )
                                  )
---------------------------------------------------------


BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE

**(SENTENCING)**

APPEARANCES
 For the Plaintiff:          U.S. Attorney's Office
                             JEFFREY S. PAULSEN, AUSA
                             600 U.S. Courthouse
                             300 South Fourth Street
                             Minneapolis, Minnesota 55415


 For the Defendant:          Orth Law Office
                             WILLIAM M. ORTH, ESQ.
                             Suite 100
                             247 Third Avenue South
                             Minneapolis, Minnesota 55415


 Court Reporter:             LORI A. SIMPSON, RMR-CRR
                             1005 U.S. Courthouse
                             300 South Fourth Street
                             Minneapolis, Minnesota 55415

     Proceedings recorded by mechanical stenography;
transcript produced by computer.

1    **P R O C E E D I N G S**

2    **IN OPEN COURT**

3        THE COURT:  Let's call this matter.

4        THE CLERK:  United States of America vs. Kevin

5    Joseph Fenner, Criminal Case No. 06-CR-211.  Counsel, will

6    you please state your appearances for the record.

7        MR. PAULSEN:  Good morning.  Jeff Paulsen for the

8    United States.

9        THE COURT:  Good morning.

10       MR. ORTH:  Good morning, Your Honor.  Bill Orth

11   representing Mr. Fenner, who is present.

12       THE COURT:  Good morning.  We are here for

13   sentencing.  Counsel, have you had an opportunity to read

14   the presentence investigation report?

15       MR. PAULSEN:  The Government has, Your Honor.

16       MR. ORTH:  Yes, Your Honor.

17       THE COURT:  Any objections to the factual

18   statements contained in the presentence investigation

19   report?

20       MR. PAULSEN:  Not to the facts.

21       MR. ORTH:  Nothing other than what has already

22   been filed, Your Honor.

23       THE COURT:  The Court will adopt the factual

24   statements contained in the presentence investigation report

25   as its own.

1          The applicable guidelines have been calculated.

2     The Government wished to have a two-level enhancement for --

3     against the defendant because in their view under 3C1.1 the

4     defendant perjured himself.  The Court has reviewed -- heard

5     the testimony and reviewed the submissions, and the Court

6     will deny the Government's motion for obstruction based on

7     giving perjured testimony at trial.

8          Therefore, the total offense level is 37, criminal

9     history points of 14, Category VI, imprisonment range life

10    imprisonment, supervised release eight years, fine range of

11    25,000 to 20 million dollars, and a special assessment of

12    $400.

13         There has been many continuances on this matter,

14    many briefs have been filed, so we don't have to spend hours

15    arguing this case.

16         Mr. Orth.

17         MR. ORTH:  I don't have the energy to spend hours,

18    Your Honor.  I've left it all in my briefs.

19         In 1954 nine justices of the United States Supreme

20    Court did the right thing.  They took on the concept of

21    separate but equal that has stood for about a hundred years

22    and they said it's just wrong.  I'm asking you to do the

23    same thing relative to the crack statute.  It is just wrong

24    to continue this folly that because Congress made a mistake

25    20 years ago we have to keep repeating it.

1          And that's why in my motion papers I mentioned to

2     you that not just the Vice President of the United States,

3     but the President of the United States signed off on the

4     change.  Now, it may be a while because they've got the

5     economy to deal with first rather than criminal justice, but

6     I'm suggesting to you, Your Honor, it's just a matter of

7     time.

8          And just as the United States Supreme Court

9     stepped up, nine of them, in separate but equal, in Brown

10    vs. the Board, I'm asking you proleptically to do the same

11    thing for what Congress is going to do either next year or

12    2010.

13         I suggested to you a sentence of 30 years in

14    prison.  That is not exactly being light on crime, soft on

15    crime.  And I chose that number, as I told Mr. Paulsen,

16    because I think even the Eighth Circuit, that I have running

17    battles with all the time, even the Eighth Circuit given the

18    current posture of Congress, even the Eighth Circuit might

19    affirm a ruling from this Court that 841(b)(1)(A)(3) is

20    unconstitutional both for the Fifth Amendment reasons and

21    the Eighth Amendment reasons that I've briefed.

22         It looks like Congress and the new administration

23    is going to do it either next year or soon thereafter.  I

24    think the Eighth Circuit would be hard pressed under these

25    circumstances to reverse you.

1    And even if the Eighth Circuit did reverse you,

2    we're not through.  We're going to go to the United States

3    Supreme Court, which has continuously told the Eighth

4    Circuit that its view of sentencing is wrong.  And then if

5    that doesn't work, we're going to come back in front of you

6    on a 2255.

7    Mr. Fenner is not going to die in prison and I

8    don't know how I'm going to get there, but we're going to

9    find a way because it's just wrong.  The basis of law is

10   morality and ethics, and this statute can no longer be

11   tolerated.

12   I brought with me the audacity of hope.  One of

13   the agents, not the agents that are present here today, but

14   one of the agents asked me last summer, Why are you fighting

15   so hard?  Why don't you just let the man go to prison?  I

16   said, Because as long as you have hope, you have everything.

17   And if you basically send him to prison for the

18   rest of his life, that's a death sentence.  He'll die in

19   prison with tubes in a prison infirmary somewhere, all

20   because Congress made a mistake 20 years ago.

21   The audacity of hope should be called the

22   necessity of hope.  Hope is the last gift in Pandora's box.

23   And when you remove hope from somebody, you've removed

24   everything.

25   I've suggested to you a 30-year sentence.  That's

1    a harsh sentence.  That's tremendous punishment.  I don't

2    know who would want to have that kind of sentence imposed

3    upon them for any reason.  This is drugs.  This is not

4    homicide.  I think it's a fair sentence and I think even the

5    Eighth Circuit might affirm you.  So I ask you to impose

6    that sentence and in one fashion or another we'll be back in

7    front of you.

8          Thank you.

9          THE COURT:  Kevin Joseph Fenner, this is your

10   opportunity to speak to me.  You have a constitutional right

11   to talk to me and tell me anything that you want to tell me

12   about yourself, about this offense, or anything else that

13   you think I should know before I sentence you.

14         THE DEFENDANT:  First can I turn to my family for

15   just a minute to speak to them for a second, please?

16         THE COURT:  You can turn to them.

17      (Defendant turns away from podium and speaks inaudibly

18       to his family.)

19                   *   *   *   *   *

20      (Defendant turns back to podium and addresses the

21       Court.)

22         THE DEFENDANT:  Your Honor, I have not lied to you

23   or these courts not one time, not one time.  In fact, I even

24   admitted my guilt on the stand.  You asked me why did I go

25   to trial back on June 22nd.  Because I believed in this law

1    system.

2              I knew I was wrong and I knew I was going to get

3    punished for what I done.  That's without a doubt.  I just

4    didn't have nothing to do with no damn crack, man, and I

5    admitted to that and I even told Paulsen himself.

6              Let's go back.  Like I said, I have not lied to

7    you or this Court not one time, not once.  However,

8    Mr. Paulsen and the case agent told the grand jury that I

9    had 80 grams of crack on me.  They indicted me for 80 grams

10   of crack and it turned out to be 35.9 grams of actual

11   powder.  They told the grand jury that I possessed

12   100 percent fentanyl, which that turned out to be 3.6

13   percent fentanyl, which is only three-tenths of a gram.

14             They told the jury, Mr. Paulsen told the jury that

15   powder and crack was basically the same, so if you sentence

16   me for one, you can sentence me for the other, and told the

17   jury that if I give somebody three ounces of powder, they

18   can convict me for crack cocaine.

19             I went to trial because I wanted to get punished

20   for my participation, what I did, not for nobody else's.  I

21   didn't make a dime off that damn crack, not one penny.  I

22   didn't know he was selling no damn crack.  I possessed

23   powder cocaine and I possessed fentanyl, yes, I did.

24             But to get the conviction and to get the most time

25   and to take me off these streets so I won't produce, so I

1    won't be no father, Your Honor -- man, I can't take this.

2    Go ahead.  Go ahead.

3           THE COURT:  Go ahead.

4           THE DEFENDANT:  I can't take it, man.  Just

5    sentence me, man.  I can't take this.  I don't want my

6    child to -- just sentence me.

7           THE COURT:  Mr. Paulsen.

8           MR. PAULSEN:  The statute calls for mandatory life

9    and the guidelines call for 360 to life because he's a

10    career offender with five prior felony drug convictions.

11    This case is one of the rare cases that calls for life

12    whether it's under the guidelines or under the mandatory

13    minimum, and I don't say that lightly.

14           I appreciate the statement Mr. Fenner just made to

15    his child and I hope the child listens because I don't want

16    to see anybody else waste their life the way Mr. Fenner has

17    done.

18           But the reason this calls for a life sentence is

19    not just because he's got five prior drug convictions that

20    haven't deterred him, but because he was selling fentanyl

21    and it was starting to kill people.  And it says so right so

22    in the PSR and there's no objection to those facts.  His

23    fentanyl was killing people and he kept selling it.

24           And these officers went out and made a case on him

25    and he was caught and he knew he was caught.  And we went to

him and we asked him for help.  You're looking at mandatory

life.  I've just enhanced you to mandatory life.  Help us

get your source down in Chicago so we can get this guy off

the streets so he doesn't kill tens or dozens of people with

his fentanyl down in Chicago.

We thought we had a deal.  We came before the

court one day, almost entered the plea, and he backed out

and said I don't want to help you.  Now, he doesn't have to

help us.  That enhancement was filed before we even sat down

with him.  That was the starting point.  He was given the

chance to work down and he chose not to.  He chose to go to

trial and try to beat it, and in my view he told some

falsehoods.

It is a sad case, but it is a case of his making.

And he can try to blame the police or me or the Court or the

judicial system, but down deep I think he knows that

everything is his fault.  It's the life he chose, and it's

sad and it's unfortunate and I hope nobody in this courtroom

would ever think to follow it, but that's the reason I'm

asking for a life sentence.

THE COURT:  On January 11, 2007 the defendant was

found guilty of Counts 1, 2, 3, and 7 of a nine-count

amended indictment following a jury trial.

Count 1, conspiracy to distribute fentanyl and in

excess of 50 grams of cocaine base, in violation of

```
 1    Title 21, United States Code, Section 841(a)(1) and

 2    (b)(1)(A) and 846 and 851.

 3              Count 2, aiding and abetting distribution of

 4    approximately 63 grams of cocaine base, in violation of

 5    Title 21, United States Code, Section 841(a)(1) and

 6    (b)(1)(A) and 851, and Title 18, United States Code,

 7    Section 2.

 8              Count 3, aiding and abetting distribution of

 9    approximately eight grams of fentanyl, in violation of

10    Title 21, United States Code, Sections 841(a)(1) and

11    (b)(1)(C) and 851, and Title 18, United States Code,

12    Section 2.

13              Count 7, possession with intent to distribute

14    approximately 63 grams of cocaine, in violation of Title 21,

15    United States Code, Section 841(a)(1) and (b)(1)(C) and 851.

16              To these counts of the indictment he was found

17    guilty by a jury and it is considered and adjudged that the

18    defendant is guilty of said charges.

19              The Court has gone over the advisory guideline

20    sentence.  The sentence will be as follows:

21              Kevin Joseph Fenner, you are sentenced to the care

22    and custody of the Bureau of Prisons for a term of life.

23    This term consists of life on each of Counts 1 and 2 and 360

24    months on each of Counts 3 and 7, all to be served

25    concurrently.
```

1          The Court will not impose a fine.

2          The defendant is sentenced to a term of eight

3   years supervised release.  This term consists of eight years

4   on each of Counts 1 and 2 and six years on each of Counts 3

5   and 7, all such terms to run concurrently.  The following

6   conditions are also imposed:

7          One, the defendant shall not commit any crimes,

8   federal, state, or local.

9          Two, the defendant shall abide by the standard

10  conditions of supervised release recommended by the

11  Sentencing Commission.

12         Three, the defendant shall refrain from possessing

13  a firearm, destructive device, or other dangerous weapon.

14         Four, the defendant shall be required to undergo

15  mandatory drug testing as set forth by Title 18, United

16  States Code, Sections 3563(a) and 3583(d).

17         Next, the defendant shall participate in a program

18  for drug abuse as approved by the probation officer.  That

19  program may include testing and inpatient or outpatient

20  treatment, counseling, or support group.  Further, the

21  defendant shall contribute to the costs of such treatment as

22  determined by the Probation Office Co-Payment Program, not

23  to exceed the total cost of treatment.

24         Next, the defendant shall cooperate in the

25  collection of DNA as approved by the probation officer and

1    mandated pursuant to Title 18, United States Code,

2    Sections 3563(a) and 3583(d).

3            Next, the defendant shall comply with the District

4    of Minnesota Offender Employment Policy, which may include

5    participation in training, counseling, and/or daily job

6    searching, as directed by the probation officer.  If not in

7    compliance with the condition of supervision requiring

8    full-time employment at a lawful occupation, the defendant

9    may be required to perform up to 20 hours of community

10   service per week until employed, as approved and directed by

11   the probation officer.

12           Finally, there's a $400 special assessment payable

13   to the Crime Victims Fund, which is required by statute to

14   be paid immediately.

15           Sir, you have a right to appeal your trial and

16   your sentence to the Eighth Circuit Court of Appeals, which

17   sits in St. Louis.  The notice of appeal has to be filed

18   within ten days of today's date.  Mr. Orth will be your

19   attorney on your appeal unless you want to handle the appeal

20   yourself or hire your own attorney.

21           The fine range is 20,000 to 20 million dollars

22   instead of 25,000, as I stated earlier, dealing with the

23   advisory guidelines.

24           Let's go back to the appeal rights and make sure

25   that you understand your appeal rights.  You have a right to

1    appeal your right -- your sentence and your trial to the

2    Eighth Circuit Court of Appeals, which sits in St. Louis.

3    You have ten days from today's date to file your notice of

4    appeal to that court.

5           Mr. Orth will immediately file that appeal for

6    you.  I am ordering him to do that because this is a life

7    sentence.  I don't want any slip-ups on your appeal.  You

8    have a right to appeal and I want you to appeal because it's

9    a life sentence.

10          Mr. Orth will handle your appeal unless you don't

11   want him to handle the appeal.  Then you can handle it

12   yourself or hire your own attorney to handle the appeal.  In

13   any event, you have ten days from today's date to file your

14   notice of appeal and I am ordering Mr. Orth to file that

15   immediately.

16          Now, I've been a judge for 25 years.  I've had

17   multiple homicides where defendants have killed two or three

18   or four people and have not received a life sentence, and

19   that's in state court.  I came to federal court 15 years

20   ago.  The sentences were quite high for drugs and especially

21   for crack cocaine.  Mr. Orth has articulated the problems

22   with the law.

23          But rest assured, Mr. Fenner, you would have

24   served a long, long sentence even if the equation was the

25   same.  You chose the life of the street.  You have numerous

1     convictions which put you in this category.  Certainly

2     having the drug of fentanyl on the street where people were

3     dying, you chose not to give up your source in Chicago,

4     which is your right.  By doing that you sealed your fate and

5     that's life in prison.

6              Anything further for the Government?

7              MR. PAULSEN:  No, Your Honor.

8              THE COURT:  For Defense?

9              MR. ORTH:  Yes, Your Honor, two things.  Would you

10    recommend that the Bureau of Prisons designate Mr. Fenner to

11    Minnesota?

12             THE COURT:  I will recommend to the Bureau of

13    Prisons that he be housed in the state of Minnesota, but

14    more than likely he will not be housed here.

15             MR. ORTH:  And the last thing.  Is it possible

16    for -- under the supervision of the Marshals that Mr. Fenner

17    can say good-bye to his wife and son?

18             THE COURT:  He'll sit at the back chair.  They are

19    not to move.  We have enough deputies in the courtroom.  He

20    can talk to them for a few minutes.

21             THE DEFENDANT:  Can I just hold my son one time?

22             THE COURT:  No.  No contact.  Do you want to

23    comply with my conditions --

24             THE DEFENDANT:  Yes.

25             THE COURT:  -- or not?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You'll sit for five minutes and talk

3    to your family.

4          Anything further?

5          MR. PAULSEN:  No, Your Honor.

6          THE COURT:  All right.

7          (Court adjourned at 10:20 a.m.)

8                    *      *      *

9

10

11          I, Lori A. Simpson, certify that the foregoing is a

12   correct transcript from the record of proceedings in the

13   above-entitled matter.

14

15          Certified by:   *s/ Lori A. Simpson*

16                          Lori A. Simpson, RMR-CRR

17

18

19

20

21

22

23

24

25